IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 5, 2014

**TROY FULLER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-12-302     Honorable Donald H. Allen, Judge**

———————————————

**No. W2013-01244-CCA-R3-PC  -  Filed March 19, 2014**

———————————————

The Petitioner, Troy Fuller, appeals the post-conviction court's denial of post-conviction relief from his convictions for rape, aggravated criminal trespass, and violation of an order or protection.  On appeal, the Petitioner argues that he received ineffective assistance of counsel.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Gregory D. Gookin, for the Defendant-Appellant, Troy Fuller.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; James G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In early 2007, the Petitioner was indicted by the Madison County Grand Jury for one count of aggravated rape, one count of aggravated burglary, and one count of violation of an order of protection for an incident involving his former girlfriend.  Following a jury trial on September 10, 2008, the jury convicted the Petitioner of rape, aggravated criminal trespass, and violation of an order of protection.  See Troy Fuller v. State, No. W2010-02582-CCA-R3-PC, 2012 WL 2115563, at *1-3 (Tenn. Crim. App. June 12, 2012), perm. app. denied (Tenn. Sept. 27, 2012).  A sentencing hearing was held on October 14, 2008, during which the Petitioner was sentenced as a Range I, standard offender.  The Petitioner presented no evidence at the hearing and received an effective sentence of 12 years.

The Petitioner filed a timely pro se petition for post-conviction relief and counsel was subsequently appointed. At the April 24, 2013 evidentiary hearing, the Petitioner testified that he hired counsel to represent him in his 2008 trial. He stated that he met with counsel "[o]fficially about two times." During those meetings, the Petitioner told counsel his "version of the story," but stated that they did not discuss any trial strategies. Petitioner recalled that the police took a DNA sample from him prior to trial; however, he claimed that he did not learn of a DNA report until the day of trial. He stated that counsel never discussed DNA evidence with him and did not question the State's witness about the DNA tests conducted. The Petitioner acknowledged that he testified at trial that he had sex with the victim. He maintained, however, that counsel was "ineffective because he didn't cross-examine [the State's witness] about . . . the inconsistent statements that [were] made about the DNA." With regard to the sentencing hearing, the Petitioner asserted that counsel was ineffective because he did not cross-examine anyone about the presentence report, which he believed could have revealed false information.

On cross-examination, the Petitioner testified that counsel "didn't do [anything] wrong or right" at the sentencing hearing. The Petitioner complained that the presentence report was not timely filed, but agreed that he did not tell counsel to ask for a continuance based on this complaint. He further complained that the presentence report was "not accurate," noting that counsel's name was not on the report, the trial date was listed as September 9, 2008, rather than September 10, 2008, and the report stated that the Petitioner was unable to make bond. He claimed that he told his attorney about the errors on the report, but agreed that he did not ask counsel to object. When asked what counsel could have done differently that would have made a difference, the Petitioner stated, "I feel like he could have represented me better at trial by asking questions and objecting. He did not make one objection at the sentencing hearing or trial."

The post-conviction court also questioned the Petitioner about his claims. The Petitioner reiterated that he did not see the presentence report until the day of his sentencing hearing. He recalled that the trial court took a recess to allow the Petitioner and his attorney to review the report. He stated that he did not object to the presentence report because counsel had "kind of just misled [him] to believe that [he] couldn't object." He elaborated that counsel told him that he should not object because he was "getting a good deal anyway." He believed, however, that he was entitled to the minimum eight year sentence. When the court attempted to question the Petitioner about his criminal history listed in the presentence report, the Petitioner responded, "I don't think I would want to answer that at this time, Your Honor, because at the time that it should have been proven that that was me, I was not granted the opportunity." He acknowledged that he chose not to testify at his sentencing hearing, but maintained that counsel should have objected to the presentence report because "it wasn't proved that [the information] was correct by any standard." When asked by the

court which part of the criminal record included in the presence report was incorrect, the Petitioner responded, "The fact that I wasn't aware of this criminal record and I wasn't made aware of this criminal record prior to the hearing and my attorney didn't prepare for my sentencing hearing."

Counsel testified that he was hired by the Petitioner and represented him at the Petitioner's September 2008 trial. He recalled that the Petitioner was out on bond before trial and "stopped by [counsel's] office regularly" to discuss the case. He estimated that he met with the Petitioner "[p]robably ten" times leading up to trial. He reviewed the indictment and discovery materials with the Petitioner, and thought the Petitioner understood everything contained in the discovery materials. He testified that their defense strategy was "focused on consent" because the Petitioner told him that he and the victim had consensual sex. Counsel believed that DNA was not an issue and testified that the Petitioner never told him to challenge its admission. Prior to trial, counsel and the Petitioner discussed whether he should testify, and counsel told the Petitioner that it was his decision. Counsel recalled that the Petitioner "wanted to be heard" and ultimately decided to testify. Counsel opined that the Petitioner's testimony helped him in this case because "the jury wants to hear from the defendant from time to time[,] especially when you have boyfriend and girlfriend talking about the sex issue."

Counsel testified that he received the presence report before the sentencing hearing. He also recalled that the State had not filed the paperwork to sentence the Petitioner in the "proper range" based on his criminal history and realized that he would be sentenced within Range I. He stated that the Petitioner may have pointed out a few minor errors on the presence report, such as a wrong alias, but that he "probably told him to keep his eye on the ball" because he was going to be sentenced within Range I and "[i]f you look at his record, you'll see what a big deal that is." Counsel explained to the Petitioner that he was facing a sentence range from eight to twelve years, and thought that the Petitioner understood the range. Counsel stated that he would "never have told [the Petitioner] that [he would get an eight-year sentence] after looking at the presence report." Counsel testified that "in retrospect [he] probably should have corrected [the errors in the presence report] because technically that's not the way it should have read," but opined that the minor errors would not have made a difference in the Petitioner's sentence. He stated, "[W]hen we walked into court . . . and I realized that we actually were going to get a Range I sentence . . . I didn't put up much resistance."

On cross-examination, counsel testified that the presence report was "hand delivered to [his] office about a week before" the sentencing hearing. He agreed that it was "possible that [he] didn't review it with [the Petitioner] until the day of the sentencing hearing." He explained that once he realized that the Petitioner would be restricted to Range

I for sentencing, his "hands were tied." He testified that he thought the Petitioner could be sentenced as a Range III or career offender and face "up to 30 years." When asked whether he considered requesting a continuance at the sentencing hearing, counsel stated, "I distinctly remember telling [the Petitioner] that we did not need a continuance[;] that we needed to take advantage of what was going on. There was no need for a continuance of the sentencing hearing in this case." With regard to the trial, counsel reiterated that their defense strategy was that the Petitioner and victim "had sexual intercourse, but it was consensual[,]" so there was no issue about DNA.

The post-conviction court took the matter under advisement, and entered a written order denying relief on May 10, 2013. The court reasoned that the "advice given and the services rendered" by counsel "were certainly within the range of competence demanded of attorneys representing defendants in criminal cases." The court noted that the Petitioner admitted during his trial testimony that he and the victim had sex, and that counsel "was able to convince the jury that the [Petitioner] was not guilty of the most serious charges of Aggravated Rape and Aggravated Robbery." Additionally, the Petitioner testified that counsel did not do anything "wrong or right" at the sentencing hearing, and the Petitioner chose not to testify. Thus, the court concluded that the Petitioner failed to establish that counsel rendered deficient performance at trial or sentencing or that the Petitioner was prejudiced.

On May 28, 2013, the Petitioner filed a timely notice of appeal to this Court.

## ANALYSIS

In this appeal, the Petitioner alleges that he received ineffective assistance of counsel at trial and sentencing. He asserts that counsel met with him only twice before trial, failed to adequately prepare for trial, and failed to object to the admission of the presentence report at sentencing, and as a result of these alleged errors, the Petitioner's defense was prejudiced. The State responds that the Petitioner failed to establish that counsel's performance was deficient or that any alleged deficiency prejudiced the Petitioner's defense, and therefore, the post-conviction court properly denied relief. Upon review, we agree with the State.[1]

---

[1] The Petitioner also alleges that he was denied due process of law because "the pre-sentence report was not included in the appellate record [on direct appeal], despite th[is] Court's order that the record should be supplemented to include the record." We note that the Petitioner has again failed to include any of the relevant documents in the record for our review, and further, has failed to cite any law in support of his contention. We, therefore, decline to address this issue.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right.  T.C.A. § 40-30-103 (2006).  The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve.  The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted).  "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)).  Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it.  Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution.  Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense.  Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both

if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

In the present case, the Petitioner first asserts that he received ineffective assistance of counsel based upon counsel's performance at trial. He maintains that counsel met with him only two times prior to trial and did not discuss any trial strategies with him. He further asserts that counsel did not discuss the State's DNA evidence with him prior to trial and was "unprepared to question any of the State's witnesses regarding DNA evidence." In denying relief, the post-conviction court credited counsel's testimony that he met with the Petitioner ten or more times and discussed with the Petitioner the State's evidence and the Petitioner's defense. The court reasoned that although the Petitioner denied that he raped the victim, he testified at trial and "admitted to 'cussing and fussing' with the victim, and arguing with the victim[] before 'tricking her' into having sex with him." As noted by the post-conviction court, the jury chose to credit the testimony of the victim over that of the Petitioner. Notably, however, counsel successively convinced the jury that the Petitioner was not guilty of the more serious offenses of aggravated rape and aggravated burglary. Accordingly, the court concluded that counsel's performance at trial was not deficient nor did it prejudice the Petitioner.

The record does not preponderate against these findings. At the post-conviction hearing, counsel's testimony, which was credited by the post-conviction court, established that he met with the Petitioner at least ten times before trial and discussed the State's evidence and the Petitioner's defense strategies with the Petitioner. Counsel testified that DNA evidence was not an issue because the Petitioner's defense was focused on consent. Likewise, the Petitioner agreed that although he disputed the victim's version of events, he admitted at trial that he went to the victim's house to argue with her and tricked her into having sex with him. Based on this testimony, we agree with the post-conviction court that counsel's conduct at trial was "certainly within the range of competence demanded."

Moreover, even assuming deficient performance, the Petitioner has been unable to demonstrate prejudice arising therefrom. The Petitioner's defense theory was one of consent, and he admitted at trial that he and the victim had sex. As noted by the post-conviction court, counsel successfully persuaded the jury to convict the Petitioner of the lesser-included offenses of rape and aggravated criminal trespass. The Petitioner has failed to establish how additional meetings with the Petitioner prior to trial or further questioning of the State's DNA witness during trial would have changed the outcome of the trial. He is not entitled to relief.

The Petitioner next complains that he received ineffective assistance of counsel at sentencing. He maintains that counsel was unprepared at the Petitioner's sentencing hearing, emphasizing that counsel did not object to the admission of the presentence report. The Petitioner's argument appears to be premised on his assertion that the report was not timely filed and contained numerous errors. In denying relief, the post-conviction court noted that the Petitioner admitted that he chose not to testify at the sentencing hearing and stated that counsel did not do anything "wrong or right" at the hearing. Accordingly, the court concluded that the Petitioner failed to establish ineffective assistance of counsel.

Again, the record does not preponderate against these findings. Contrary to the Petitioner's testimony, counsel testified that the presentence report was hand delivered to his office at least a week prior to the sentencing hearing. Counsel agreed that the Petitioner may have pointed out a few minor errors on the presentence report, but testified that none of the errors would have impacted the length of the Petitioner's sentence. He advised the Petitioner against seeking a continuance to review and correct the presentence report because the Petitioner was going to be sentenced within Range I, which counsel believed was a "big deal" based on the Petitioner's criminal record. Further, the Petitioner admitted that he did not tell counsel to object to the presentence report and he chose not to testify at the hearing. Based on this testimony and evidence, we conclude that counsel's decision not to object or move for a continuance was a tactical decision based on adequate preparation and was well "within the wide range of reasonable professional assistance." See Burns, 6 S.W.3d at 462.

Furthermore, the Petitioner has failed to establish that he was prejudiced in any way by counsel's performance. As an initial matter, we note that the Petitioner did not include the presentence report in the record for our review. Additionally, although he testified at the post-conviction hearing that the report contained numerous errors, he put forth no evidence to establish that any of the information in the report was incorrect and refused to answer any questions from the post-conviction court regarding the accuracy of the report and the prior convictions listed. Counsel, on the other hand, testified that any errors in the report were minor in nature and would not have impacted the length of the Petitioner's sentence. Based on this record and the testimony at the post-conviction hearing, we conclude that the Petitioner failed to establish by clear and convincing evidence that he was prejudice by the admission of the presentence report. Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE